UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:16-cr-00002-JMS-TAB-7 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| CHRISTOPHER HARRIS | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cr-00002-JMS-TAB |
| | ) | |
| CHRISTOPHER HARRIS, | ) | -07 |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Christopher Harris (07) has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). [Filing No. 1074.] For the reasons explained below, his motion is **DENIED**.

**I.**
**BACKGROUND**

On October 4, 2017, Mr. Harris pled guilty to one count of Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1). [Filing No. 779.] The offense conduct is summarized as follows:

> From late 2014 through December 10, 2015, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), along with other law enforcement, conducted an investigation into a drug distribution ring operating in Indianapolis, Indiana. Codefendant Michael Johnson was the initial focus of their investigation due to information from confidential sources that he was dealing in large amounts of controlled substances, including methamphetamine.
>
> On November 18, 2015, Christopher Harris made arrangements to purchase eight ounces of methamphetamine from Johnson. Harris and Anthony Jefferson pooled their money together to purchase the methamphetamine, and Jefferson was to receive a portion of the eight ounces of the substance.
>
> Surveillance officers observed Harris and codefendant Tyrika Evans meeting Johnson at [a residence] in Indianapolis on November 18, 2015. Johnson and Harris met for a short time and then Harris returned to the vehicle he arrived in, which was

2

> being driven by Evans. They were followed by law enforcement and subsequently stopped for a traffic violation.
>
> When officers approached the vehicle, they smelled marijuana. Evans explained that she and Harris had previously smoked a "blunt." A search was conducted of the vehicle, Harris, and Evans. Located in a portable ashtray in the car was a marijuana cigarette, and located on Evans, in her bra, was 197 grams of actual methamphetamine. Prior to the search being conducted, Evans was given multiple chances to tell the officers about the drugs that were on her person; however, she failed to do…so and denied having any drugs on her. According to Evans, she intended to give the methamphetamine back to Harris, as he intended to distribute it to a third party, including Jefferson.

[Filing No. 763 at 6.]

Mr. Harris faced a guideline term of imprisonment of 240 months (based on a statutory mandatory minimum term of imprisonment of that length). [Filing No. 763 at 19.] The Court sentenced him to 240 months of imprisonment followed by 10 years of supervised release. [Filing No. 780.] The Bureau of Prisons ("BOP") currently reports Mr. Harris's anticipated release date (with good-conduct time included) as December 6, 2032. https://www.bop.gov/inmateloc/ (last visited April 22, 2025).

Mr. Harris filed an Emergency Motion for Reduction in Sentence on January 13, 2025. [Filing No. 1074.] He argues that he establishes extraordinary and compelling reasons for compassionate release because: (1) the Superseding Indictment was defective; (2) there was a change in the law that would lead to a lower sentence today; (3) he faced harsh conditions during the Covid-19 pandemic; (4) a change in Department of Justice ("DOJ") policy reflects that his sentence is unusually long; (5) his sentence reflects a "gross disparity" with the sentence he would receive today; and (6) all of these reasons, along with his rehabilitation efforts, combine to warrant compassionate release. [Filing No. 1074 at 3-18.] The Government opposes the motion, [Filing No. 1079], and Mr. Harris filed a reply, [Filing No. 1083]. The motion is now ripe for the Court's consideration.

## II.
### DISCUSSION

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet under one exception to this rule, a provision known as compassionate release, a court may reduce a sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

The United States Sentencing Commission has been authorized by Congress to develop policies to be used by the courts in considering compassionate release motions. The Sentencing Commission has set forth the following considerations: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement"; and second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(1)(A) and (a)(2). If a court finds that extraordinary and compelling reasons exists and that the defendant is not a danger to the safety of any other person or to the community, it goes on to consider the sentencing factors in 18 U.S.C. § 3553(a), "to the extent that they are applicable." U.S.S.G. § 1B1.13(a).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction," *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023).

Mr. Harris has argued what he contends are five extraordinary and compelling reasons in support of his motion for compassionate release. The Court will address each in turn.

**A. Defective Superseding Indictment**

Mr. Harris argues that the Superseding Indictment was defective because it "[f]ails to charge the penalty provision for the ten-year penalty provision to trigger a mandatory minimum sentence (as all that is charged is 21 U.S.C. 841(a)(1), no penalty provision)." [Filing No. 1074 at 6-7 (emphasis omitted).]

The Government responds that Count 13 of the Superseding Indictment specifies that Mr. Harris was charged with possessing with the intent to distribute "50 grams or more of methamphetamine," and that this was sufficiently specific to "trigger[ ] the ten year mandatory minimum." [Filing No. 1079 at 5.]

Mr. Harris argues in his reply[1] that the defective Superseding Indictment can be considered an extraordinary and compelling reason for compassionate release under U.S.S.G. § 1B1.13(b)(5). [Filing No. 1083 at 3-4.]

Mr. Harris did not object to the sufficiency of the Superseding Indictment before trial, so has forfeited his ability to challenge it now. Fed. R. Crim. P. 12(b)(3) (providing that a defect in the indictment, including for lack of specificity, must be raised by a pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits"). He makes no attempt to show that there was good cause for forfeiting the argument. And, in any event, Count 13 of the Superseding Indictment is not defective. It specifies that Mr.

---

[1] Mr. Harris filed his reply on April 17, 2025, after the deadline for doing so had passed, but contends that he did so because he did not receive the Government's response until March 21, 2025. [Filing No. 1083 at 2.] Mr. Harris's reply was due 14 days after the Government's response, [see Filing No. 1075], so it is still untimely even if he received the Government's response on March 21, 2025. Nevertheless, the Court considers Mr. Harris's reply despite its untimeliness.

Harris was charged with "knowingly and intentionally possess[ing] with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)." [Filing No. 423 at 6.] This was a "plain, concise, and definite written statement of the essential facts constituting the offense charged," and provided "the official or customary citation of the statute…that [Mr. Harris was] alleged to have violated." Fed. R. Crim. P. 7(c)(1). Because the Superseding Indictment was not defective, any argument that it qualifies Mr. Harris for relief under U.S.S.G. § 1B1.13(b)(5) is without merit.

Mr. Harris's argument that the Superseding Indictment was defective is without merit, and is not an extraordinary and compelling reason for compassionate release, whether considered alone or in combination with any other reason.

### B. Change in the Law

Mr. Harris argues that if he were sentenced today, he would no longer qualify for the statutory enhancement set forth in 21 U.S.C. § 841(b)(1)(A), so his 20-year mandatory minimum would now be a 10-year mandatory minimum. [Filing No. 1074 at 7-8.]

The Government argues that "claimed errors in a defendant's judgment cannot provide extraordinary and compelling reasons for a sentence reduction," and that U.S.S.G. § 1B1.13(b)(6) does not "authorize[] courts to find that…a claimed error in the judgment establishes an extraordinary and compelling reason for a sentence reduction under Section 3582(c)(1)(A)(i)." [Filing No. 1079 at 6.] It notes that the proper vehicle for challenging an error in a conviction or sentence is through a petition under 28 U.S.C. § 2255. [Filing No. 1079 at 7.] The Government also asserts that the United States Sentencing Commission exceeded its congressionally delegated authority when it promulgated § 1B1.13(b)(6). [Filing No. 1079 at 9-14.]

Mr. Harris argues in his reply that he is entitled to relief under § 1B1.13(b)(5) because his sentence reflects a disparity when compared to the sentence that he would have received today. [Filing No. 1083 at 4-5.]

Mr. Harris is challenging his sentence, but a motion for compassionate release is not the proper vehicle for doing so. Rather, he can only challenge his sentence through a petition filed pursuant to 28 U.S.C. § 2255. *See United States v. Martin*, 21 F.4th 944, 946 (7th Cir. 2021). But Mr. Harris has already filed a § 2255 petition, [Filing No. 857], which the Court denied, [Filing No. 887]. He must receive permission from the Seventh Circuit Court of Appeals to file a successive § 2255 petition, 28 U.S.C. § 2255(h), and he has not done so.

As for Mr. Harris's § 1B1.13(b)(5) argument, under § 1B1.13(b)(5) and (b)(6) of the United States Sentencing Guidelines, the Sentencing Commission has provided that extraordinary and compelling reasons for release exist under the following circumstances:

> **(5) Other Reasons.**—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).
>
> **(6) Unusually Long Sentence.**—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G § 1B1.13(b)(5)-(6). Also relevant here, § 1B1.13(c) provides:

> **(c) Limitation on Changes in Law.**—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the

law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G § 1B1.13(c).

Any argument that Mr. Harris's sentence is unusually long due to a change in the law may not be brought under § 1B1.13(b)(5), but can only be brought under § 1B1.13(b)(6). U.S.S.G. § 1B1.13(c). However, he has not developed an argument under § 1B1.13(b)(6) and so it is waived. *Greenbank v. Gr. Am. Assur. Co.*, 47 F.4th 618, 629 (7th Cir. 2022) (noting that courts "are not responsible for constructing the parties' arguments"). And, in any event, Mr. Harris has not yet served ten years of his sentence so does not qualify for relief under § 1B1.13(b)(6).[2]

Mr. Harris's argument that a change in the law would lead to him receiving a shorter sentence if he were sentenced today is not an extraordinary and compelling reason for compassionate release, whether considered alone or in combination with any other reason.

**C. Harsh Conditions Due to Covid-19**

Mr. Harris argues that he faced harsh conditions of confinement during the Covid-19 pandemic, including "lockdowns for weeks and months at a time," not getting to shower daily, being provided with cold food, being deprived of adequate medical treatment, given an ineffective cloth mask, being denied proper cleaning solution for his cell and hands, being given "1 roll due to the Lockdowns," not being able to "program," receiving only one or two recreation and library opportunities per week, and being denied visits from family and loved ones. [Filing No. 1074 at 10.] He argues that if he was sentenced today "and was incarcerated through the COVID-19

---

[2] The Court of course recognizes that subparagraph (b)(6) has been declared invalid by the Seventh Circuit. *United States v. Black,* 131 F.4th 542 (7th Cir. 2025). The Court is also aware that appellate review in *Black,* and another case raising the same issue, *United States v. Rutherford,* 120 F.4th 360 (3d Cir. 2024), is not yet finalized. Indeed, the Court has stayed motions in other cases pending the appeals in *Black* and *Rutherford.* No stay is warranted here given that Mr. Harris does not meet the ten-year sentence service requirement of subparagraph (b)(6).

pandemic he would have likely received a lower federal sentence than the 240-months he is currently serving," which creates a disparity in sentencing. [Filing No. 1074 at 11.]

The Government responds that Mr. Harris merely "recites living under the same restrictions that [the] BOP instituted in light of COVID-19 in efforts to keep the incarcerated population safe; these conditions, while restrictive, were reasonable and appropriate restrictions in light of the pandemic." [Filing No. 1079 at 15.]

In his reply, Mr. Harris reiterates his argument that the harsh conditions he faced during the Covid-19 pandemic can be considered an extraordinary and compelling reason for compassionate release. [Filing No. 1083 at 5-6.]

Allegations that the BOP mishandled the pandemic might form the basis for relief in a civil suit filed in Mr. Harris's district of incarceration, but such allegations are not grounds for a sentence reduction under § 3582(c)(1)(A). *See United States v. Miller*, 2022 WL 2187555, at *1 (7th Cir. June 16, 2022) ("[T]o the extent that [defendant] challenges the conditions and medical care at [the prison] more generally, a compassionate-release motion is not the right vehicle.") (cleaned up); *United States v. Montez*, 2023 WL 3431239, at *2 (7th Cir. May 12, 2023) (medical issue can be addressed through vehicles other than compassionate release) (cleaned up).

Every inmate at Mr. Harris's facility, and indeed, many inmates across the country, have dealt with similar issues due to the pandemic over the past few years. Mr. Harris has simply not shown that his situation is extraordinary as compared to other inmates, *United States v. Khelifi*, 2022 WL 3925623, at *1 (7th Cir. Aug. 31, 2022), and the Court rejects the notion that Mr. Harris should somehow be credited with extra time because his conditions of confinement were harsher than they would have been absent Covid-19 restrictions. The Court finds that the fact that Mr. Harris served part of his sentence during the Covid-19 pandemic and faced facility-wide

restrictions is not an extraordinary and compelling reason for release, whether considered alone or in combination with any other reason.

### D. Change in DOJ Policy

Mr. Harris argues that in 2022, "the U.S. Attorney General issued a Memorandum to all federal prosecutors establishing a new DOJ policy[;] relevant herein is A.G. Garland's instruction to not utilize mandatory minimum sentences." [Filing No. 1074 at 13.] He asserts that "individuals sentenced today would not receive a mandatory minimum charge for [a] Methamphetamine conviction versus when [he] was sentenced in 2017." [Filing No. 1074 at 13 (emphasis omitted).]

The Government argues that the 2022 policy is no longer in effect and that a February 5, 2025 Memorandum instructs prosecutors to "charge and pursue the most serious, readily provable offense," including those with "significant mandatory minimum sentences." [Filing No. 1079 at 16 (quotation and citation omitted).] It notes that even if the 2022 policy was still in effect, Mr. Harris still would have been charged with the most serious offense and the mandatory minimum sentence would still have been pursued because the 2022 policy qualified its application and Mr. Harris would have been exempted. [Filing No. 1079 at 16-17.]

Mr. Harris argues in his reply that the change in DOJ policy can be considered an extraordinary and compelling reason for compassionate release under § 1B1.13(b)(5). [Filing No. 1083 at 6-7.]

Again, Mr. Harris challenges the propriety of his sentence, which he can only do through a § 2255 petition. *See Martin*, 21 F.4th at 946. And in any event, the 2022 policy is no longer in effect and has been replaced with a February 2025 Memorandum which provides that:

> [I]n the absence of unusual facts, prosecutors should charge and pursue the most serious, readily provable offense. The most serious offenses are those punishable by death, or those with the most significant mandatory minimum sentences

10

(including under the Armed Career Criminal Act and 21 U.S.C. § 851) and the most substantial recommendation under the Sentencing Guidelines.

[Filing No. 1079-1 at 2.] Moreover, even if the 2022 policy was still in effect, it specifically stated that prosecutors should decline to charge the quantity necessary to pursue the mandatory minimum only if "[t]he defendant does not have a significant history of criminal activity that involved the use or threat of violence, personal involvement on multiple occasions in the distribution of significant quantities of illegal drugs, or possession of illegal firearms." [Filing No. 1074-1 at 17.] As discussed more fully below, this criteria does not describe Mr. Harris, who had been arrested 21 times when he committed the offense underlying this case, including for violent crimes like battery resulting in injury and involuntary manslaughter, for dealing cocaine, and for carrying a handgun without a license. [Filing No. 763 at 7-15.] Mr. Harris's reliance on a change in DOJ policy does not constitute an extraordinary and compelling reason for compassionate release, whether considered alone or in combination with any other reason.

### E.  Sentence Reflects Gross Disparity

Mr. Harris argues that if he was sentenced today he would have received a "substantially lower" sentence. [Filing No. 1074 at 15.] He asserts that the "national average sentence for [a] methamphetamine trafficking offender such as similarly-situated individuals nationally was 180-188 months of imprisonment." [Filing No. 1074 at 16.]

The Government argues in its response that Mr. Harris's criminal history was not typical of the average defendant in Criminal History Category IV because he had 21 prior arrests; was sentence to 16 years imprisonment in a different case for dealing in cocaine, involuntary manslaughter, and carrying a handgun; was not released to parole until 2013; and committed multiple crimes of violence including engaging in a physical fight with his mother, battery of two other women, carrying a handgun without a license, and involuntary manslaughter. [Filing No.

11

1079 at 17-18.] The Government also notes that Mr. Harris "separated himself from the 'average defendant' in that he consistently demonstrated a failure to rehabilitate himself," and committed numerous probation violations including positive drug screens, failure to comply with substance abuse treatment, and new arrests. [Filing No. 1079 at 18.] It states that Mr. Harris also was subject to numerous disciplinary actions while serving his state sentence. [Filing No. 1079 at 18-19.]

Mr. Harris reiterates his assertion that he would have received 180 to 188 months of imprisonment if sentenced today. [Filing No. 1083 at 7.]

Mr. Harris again is challenging his sentence by arguing that he would have faced a different term of imprisonment if sentenced today. As the Court has explained, he can only challenge his sentence through a § 2255 petition, the Court has denied his previous § 2255 petition, he must receive permission from the Seventh Circuit Court of Appeals to file a successive petition, and he has not done so.

To the extent Mr. Harris intends to rely on the "catchall" provision of U.S.S.G. § 1B1.13(b)(5), he fares no better. As discussed above, Mr. Harris cannot use § 1B1.13(b)(5) to challenge the length of his sentence because any challenge related to changes in the law may only be considered in connection with § 1B1.13(b)(6). U.S.S.G. § 1B1.13(c). Mr. Harris has waived any argument under § 1B1.13(b)(6) and he does not qualify for relief under that provision in any event because he has not yet served ten years of his term of imprisonment. U.S.S.G. § 1B1.13(b)(6).

Mr. Harris's vague argument that he would face a different term of imprisonment if sentenced today does not constitute an extraordinary and compelling reason for compassionate release, whether considered alone or in connection with any other reason.

### F. Prior Reasons Combined With Rehabilitation Efforts

Finally, Mr. Harris asserts that all of the reasons he has presented, combined with his "meritorious post-rehabilitation efforts," constitute extraordinary and compelling reasons for compassionate release under U.S.S.G. § 1B1.13(d). [Filing No. 1074 at 17.]

The Government responds that his conduct within the BOP "tells a different story," and notes that Mr. Harris admitted to being in possession of a cell phone in May 2019, admitted to attempting to destroy a cell phone in May 2020, was disciplined for having a screwdriver in January 2021, was disciplined for being in possession of a cell phone and suboxone in December 2021, and was disciplined for making a three-way call in violation of facility rules in November 2022. [Filing No. 1079 at 19.] It asserts that Mr. Harris's efforts at rehabilitation have been "mediocre, at best." [Filing No. 1079 at 19.]

In his reply, Mr. Harris admits to engaging in several BOP violations during his imprisonment, but asserts that the violations do not "define the person who he is" and cites cases in which he contends courts "granted a reduced federal sentence even though the inmate had caught several misconduct reports in the BOP." [Filing No. 1083 at 7-8.]

U.S.S.G. § 1B1.13(d), upon which Mr. Harris relies, states:

> [R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

As the Court has explained, none of Mr. Harris's proffered extraordinary and compelling reasons are legally cognizable. Yet even if the Court were to consider Mr. Harris's post-sentencing conduct, he has not demonstrated that he has consistently worked toward rehabilitation by engaging in good behavior while incarcerated. Indeed, he has been disciplined numerous times in

13

connection with a variety of incidents that violated facility and BOP rules. [*See* Filing No. 1079-2.] And in any event, the Court has already found that none of the other grounds Mr. Harris raises constitute extraordinary and compelling reasons for release, and rehabilitation and good behavior, no matter how exceptional, cannot be extraordinary and compelling reasons to reduce a sentence. *See* 28 U.S.C. § 994(t); *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) ("We cannot read § 3582(c) to permit good prison conduct and rehabilitation alone to override Congress's determinate sentencing scheme."). The Court does not find Mr. Harris's behavior while incarcerated, whether considered alone or in conjunction with any other reason, to be an extraordinary and compelling reason to grant him compassionate release.

The Court, in its discretion, finds that Mr. Harris has not carried his burden to establish any legally valid extraordinary and compelling reasons for his release, whether considered alone or in conjunction with any other reason. In any event, even if the Court found that extraordinary and compelling reasons exist, it also finds that Mr. Harris is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). Mr. Harris was responsible for a very large quantity of drugs – 197 grams of actual methamphetamine. [Filing No. 763 at 6.] This drug is particularly dangerous to the public. Additionally, Mr. Harris had already served a significant amount of time for dealing in cocaine, involuntary manslaughter, and carrying a handgun without a license. [Filing No. 763 at 11-12.] He has been arrested 21 times. [Filing No. 763 at 8-15.] Two of his arrests were for battery and he has also been arrested for resisting law enforcement multiple times. [Filing No. 763 at 8-10.] And significantly, Mr. Harris has been disciplined in the BOP for numerous rule violations. [Filing No. 1079-2.] These circumstances indicate that Mr. Harris is a danger to the safety of any other person or to the community, making compassionate release unwarranted.

In sum, the Court finds that Mr. Harris has not presented extraordinary and compelling reasons to release him, whether considered alone or in conjunction with any other reason, and also finds that he is a danger to the safety of any other person or to the community. Given these determinations, the Court need not address whether the sentencing factors listed in 18 U.S.C. § 3553(a) weigh in favor of his release.

### III.
### CONCLUSION

For the reasons stated above, Mr. Harris's Emergency Motion for Reduction in Sentence, [1074], is **DENIED**.

Date: 4/22/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Christopher Harris
#14151-028
FCI Thomson
Federal Correctional Institution
P.O. Box 1002
Thomson, IL 61285